UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                            15-cr-0379 (PKC)

            -against-                                       ORDER


GEOVANNY FUENTES RAMIREZ,

                        Defendant.
------------------------------------------------------------x

GEOVANNY FUENTES RAMIREZ,

                        Movant,
            -against-                                       24-cv-8924 (PKC)


UNITED STATES OF AMERICA,


                        Respondent.

_____x

CASTEL, Senior District Judge


        Geovanny Fuentes Ramirez, who is proceeding pro se, moves to vacate, set aside,

or correct his sentence under 28 U.S.C. § 2255.  While his motion was pending, Fuentes Ramirez

moved for leave to amend.  The Court granted that request on condition that "the amended

motion fully replaces the original motion and any argument not fully set out in the amended

motion will be deemed abandoned."  (ECF 854.)  Thereafter, he filed an amended motion under

section 2255.

        Fuentes Ramirez was charged in a superseding indictment with three counts of

narcotics and weapons-related offenses.  Count One charged him with conspiring to import

cocaine from Honduras into the United States.  Count Two charged him with possessing machineguns and destructive devices during and in relation to the charged conspiracy.  Count Three charged him with conspiring to possess machineguns and destructive devices during and in relation to the charged conspiracy.  A jury convicted Fuentes Ramirez on all three counts.[1] The Court denied Fuentes Ramirez's motion for acquittal under Rule 29 or for a new trial under Rule 33.  (ECF 353.)  He was sentenced principally to concurrent terms of life imprisonment on Counts One and Three and to thirty years on Count Two to run consecutively to the two life terms.

The Second Circuit affirmed the judgment of conviction.  United States v. Morales, 21-cr-885, 2024 WL 220402 (2d Cir. Jan. 22, 2024) (summary order), cert. denied sub nom. Alvarado v. United States, 145 S. Ct. 234 (2024).

The Court has considered the entirety of Fuentes Ramirez's arguments in the amended motion, construing them as raising the strongest arguments consistent with the grounds he has alleged.  For the reasons to be explained, the motion will be denied.

LEGAL STANDARD

"Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack."  Adams v. United States, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).  Review of a section 2255 motion is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation

---

[1] In special interrogatories, the jury found that the offenses in Counts Two and Three involved a machinegun but not a destructive device.

of judicial resources." United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting

Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)).  To prevail on a section 2255

motion, a movant must show "a constitutional error, a lack of jurisdiction in the sentencing court,

or an error of law or fact that constitutes 'a fundamental defect which inherently results in a

complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting

Hill v. United States, 368 U.S. 424, 428 (1962)).

An evidentiary hearing may be necessary if the motion "set[s] forth specific facts

supported by competent evidence, raising detailed and controverted issues of fact that, if proved

at a hearing, would entitle [the movant] to relief."  Gonzalez v. United States, 722 F.3d 118, 131

(2d Cir. 2013).  An evidentiary hearing is not required when the movant's allegations are "vague,

conclusory, or palpably incredible."  Machibroda v. United States, 368 U.S. 487, 495 (1962).

Given Fuentes Ramirez's pro se status, the Court considers his submissions "to raise the

strongest arguments that they suggest."  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)

(internal quotation marks omitted).

A defendant asserting that counsel's performance was ineffective under the Sixth

Amendment must satisfy the two-prong test established by Strickland v. Washington, 466 U.S.

668 (1984).  First, "the defendant must show that counsel's representation fell below an objective

standard of reasonableness."  Id. at 669.  In deciding whether counsel's performance was

objectively reasonable, a court must make "every effort . . . to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

conduct from counsel's perspective at the time" and "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."

Bierenbaum v. Graham, 607 F.3d 36, 50–51 (2d Cir. 2010) (quoting Strickland, 466 U.S. at 689).

"Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." Gibbons v. Savage, 555 F.3d 112, 122 (2d Cir. 2009). "Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

DISCUSSION

Fuentes Ramirez asserts that his counsel was ineffective in several ways, each of which the Court will consider in turn.

*Lack of Physical or Tangible Evidence.* Fuentes Ramirez assails his counsel's failure to exploit the lack of physical evidence connecting him to the conspiracy and suggests there is a related "potential for unfair prejudice in violation of the 6th Amendments' [sic] right to counsel." (ECF 855 at 26.) But counsel vigorously argued in his closing argument to the jury that the government had not introduced any photos, videos, audio, or text messages connecting Fuentes Ramirez to the alleged co-conspirators:

> Now, you know that there are no audiotapes, there are no videotapes of Geovanny and Leo. There's no pictures of them together. There's no calls on Geovanny's phone to Leonel or Javier Rivera. There's no text messages. There's no WhatsApp chats. There's no emails. Indeed, the government failed to produce any documentary evidence of any actual contact between Geovanny and any of the alleged drug dealers who were part of this conspiracy or even any contacts between Geovanny and the politicians he supposedly owned. You saw he had numbers, people's phone numbers, in his phone, but

what you didn't see were calls or texts or chats or emails or any actual contacts.

(Tr. 1101.)  Defense counsel also called the jury's attention to the fact that "no police reports, [and] no forensics" were offered by the prosecution and suggested the prosecution failed to establish the photos of guns on Fuentes Ramirez's phone depicted guns he actually owned.  (Tr. 1116–17.)  Fuentes Ramirez's claim that his counsel failed to argue there was insufficient physical evidence connecting him to the conspiracy is thus without a basis in the record.

*Cross-Examination of DEA Special Agent Fairbanks.*  Fuentes Ramirez also "submits that his trial counsel failed to impeach single DEA [Special Agent Brian] Fairbanks who demonstrated that he has not investigated Fuentes for anything" and who "admits that he took multiple photographs from an iCloud account . . . believing that those guns in the photo's [sic] belonged to a Florida citizen who is Mr. Fuentes' son."  (ECF 855 at 26–27.)  By declining to explain how defense counsel ought to have impeached Fairbanks in relation to any investigation he did or did not conduct or the iCloud photos, Fuentes Ramirez fails to articulate how counsel's representation could have been objectively unreasonable in this regard.  Fuentes Ramirez's vague allegation cannot sustain a claim for ineffective assistance under Strickland. Further, defense counsel's cross-examination of Special Agent Fairbanks was quite effective in establishing that he did not know whether the photographs of weapons had been taken with Fuentes Ramirez's phone or sent to him by others, and, with few exceptions, when or where the photos had been taken.  (Tr. 174–76.)  He was similarly able to undermine the photos taken from Fuentes Ramirez's son's iCloud account.  (Tr. 175–77.)

*Use of Demonstrative Firearm Evidence.*  Fuentes Ramirez further argues counsel should have objected to the government's "demonstrations of fully automatic weapons that Mr. Fuentes allegedly possessed" because "[t]he probative value" of the demonstrations "did not

- 5 -

come close in outweighing the prejudicial weight that the physical presence of the weapons had on the jury." (ECF 855 at 27–28.)  Decisions about "when to object and on what grounds are primarily matters of 'trial strategy and tactics,' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so."  United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (internal quotation marks and citation omitted).  There are no such exceptional grounds here. Counsel conducted a simple but effective cross-examination of the government witness in question, a forensic firearms scientist who testified as to the capabilities and manner of operation of certain weapons, establishing that each weapon demonstrated was from a government repository rather than having been seized from Fuentes Ramirez himself, and that the witness did not know where the images of weapons shown to him earlier had come from.  (Tr. 1022–23.) Any objection to demonstrative exhibits used to illustrate the difference, for example, between an automatic and a semi-automatic firearm would not have been successful.  As the government notes, this Court permitted a similar demonstration during the trial of Fuentes Ramirez's co-defendant, Tony Hernandez.  (See ECF 111, Tony Hernandez Trial Tr. 974–1005.)

Next, Fuentes Ramirez contends counsel was ineffective in assenting to the admission of, and responding to a jury note pertaining to, Exhibit 613, a photograph of a weapon. The photograph was received into evidence during the government's examination of Leonel Rivera, who testified that he recognized the weapon depicted, and that he had seen Fuentes Ramirez with a similar weapon.  (Tr. 310–11.)  During deliberations, the jury inquired as to the source of the photograph.  (Tr. 1194.)  Defense counsel and the government agreed on a response explaining that the record does not identify the source of Exhibit 613 and that it was offered and received during Rivera's testimony as a demonstrative exhibit.  (Tr. 1194–95.)  According to Fuentes Ramirez, Exhibit 613 was improperly admitted because it was "something used purely to

refresh a witnesses [sic] mind." (ECF 855 at 30.)  But that is not the case.  The photograph was used not to refresh Rivera's memory, but rather to permit Rivera to link a particular kind of weapon to Fuentes Ramirez.  Even if Exhibit 613 had been used to refresh Rivera's memory and thus could not have been properly offered by the government, see Rule 612, Fed. R. Evid., Fuentes Ramirez cannot show prejudice.  Exhibit 613 was one of many images of weapons tied to Fuentes Ramirez and received into evidence during the trial.  (See, e.g., Tr. 75 (describing weapons depicted in photographs from Fuentes Ramirez's cell phone).)  The admission of Exhibit 613 therefore would not "undermine confidence in the outcome" of the trial even if it had been improper, and it was not.  See Strickland, 466 U.S. at 694.

Cross-Examination of Leonel Rivera.  Defense counsel's performance during the cross examination of Leonel Rivera is another basis on which Fuentes Ramirez's motion rests. Fuentes Ramirez first argues counsel should have impeached Rivera based on records contradicting his claim that he ceased illegal activity in 2013 after beginning to cooperate with the DEA.  He does not, however, identify or describe in any way the records that purportedly reveal ongoing criminality by Rivera.  Fuentes Ramirez also argues counsel should have moved to strike certain parts of Rivera's testimony.  Specifically, there were several instances in which Rivera "added to the end of . . . his responses" to questions by defense counsel the phrase "'just like your client did . . .' or something similar[.]"  (ECF 855 at 28.)  For example:

> Q.  So you had a high-ranking member of the police department as one of your assassins, correct?
>
> A.  Yes, sir, just as your client did[.]

(Tr. 412.)

Defense counsel's efforts to undermine Rivera's credibility were far-reaching.  As this Court has previously explained, "counsel extensively cross-examined Rivera regarding his

cooperation with the government, role in the *Cachiros* and the seventy-eight murders listed in his plea agreement." (ECF 353 at 10.)  Defense counsel also repeatedly objected to Rivera's non-responsive invocations of Fuentes Ramirez.  (See, e.g., Tr. 404 ("Mr. Rivera, I didn't ask you anything about Mr. Fuentes in that last question, correct?).)  "There are countless ways to provide effective assistance in any given case."  Strickland, 466 U.S. at 689.  It was not unreasonable for defense counsel to select, among countless options, several means of undermining Rivera to the exclusion of others that Fuentes Ramirez has suggested with the benefit of hindsight.

*Failure of Defendant to Testify or Otherwise Call Witnesses.*  Fuentes Ramirez contends he received ineffective assistance of counsel because his desire to present a defense case was not honored.  He alleges, more specifically, that counsel erroneously informed the Court that he was content with the defense strategy, refused to present a witness whom he had flown in from Honduras at his own expense, and prevented him from crafting a defense case himself by failing to provide him with Spanish-language documents though he does not speak English.  On the record and after the government rested its case, defense counsel addressed his discussions with Fuentes Ramirez concerning his right to testify.  (Tr. 1027–28.)  Defense counsel, in the presence of his client, confirmed that he had "absolutely no doubt" that his client understood that he had the right to testify even if his lawyer thought it a bad idea.  (Id.)  Immediately thereafter, defense counsel announced that the defense would rest subject to a single qualification relating to an expected stipulation.[2]  The Court then inquired:

> THE COURT: All right. Mr. Fuentes Ramirez, you heard what your lawyer said.  Is that acceptable to you?
>
> THE DEFENDANT: Yes, your Honor.

---

[2] Defense counsel offered a written stipulation between the parties on several factual issues and one exhibit into evidence after resting.  (See Tr. 1042–46.)

(Tr. 1029.)

Fuentes Ramirez "cannot claim now that he was prevented in any meaningful way from expressing any indecision or discomfort to the court in response to the court's inquiry." Broxmeyer v. United States, 661 F. App'x 744, 748 (2d Cir. 2016) (summary order). Further, Fuentes Ramirez offers no details about testimony he would have given. Nor does he offer any information about the substance of the expected testimony of the witness for whom he had arranged travel. In any event, "[c]ourts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005). Trial "counsel's decision as to 'whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.'" United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (quoting United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)). Fuentes Ramirez's claim about putting on a defense case therefore does not identify any unreasonable lapse by defense counsel.

*Search Warrant for Son's iCloud Account.* Fuentes Ramirez objects to counsel's failure to challenge a search warrant that granted the government access to his son's iCloud account. See Franks v. Delaware, 438 U.S. 154, 155–56 (1978) (explaining that a warrant may be challenged on the basis that an allegedly false statement, "necessary to the finding of probable cause," was made "knowingly and intentionally, or with reckless disregard for the truth," in the warrant affidavit). According to Fuentes Ramirez, the DEA's warrant affidavit contained known falsehoods. (ECF 855 at 17.)

"Counsel's election to forgo an unsupported argument" does not constitute ineffective assistance, Best, 219 F.3d at 201, and Fuentes Ramirez gives the Court no reason to

find his argument is supported.  First, it is not readily apparent that he would have standing to challenge the adequacy of a search warrant not directed to him.  See United States v. Payner, 447 U.S. 727, 731 (1980) (stating that "the established rule [is] that a court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights").  Second, to obtain a Franks hearing on the truthfulness of a warrant affidavit, "the challenger's attack must be more than conclusory" and the challenger "should point out specifically the portion of the warrant affidavit that is claimed to be false[.]" Franks, 438 U.S. at 171.  Because Fuentes Ramirez has not pointed out the purportedly false portion of the agent's affidavit, his objections to his counsel's failure to challenge the warrant fail under the first prong of Strickland.  Further, defense counsel pursued instead the plausible strategy of objecting to the admission of the fruits of the social media and iCloud searches on the basis that the government had been unsuccessful in tying them to Fuentes Ramirez.  (See ECF 271.)  And when the objection did not prevail at trial, counsel raised it again in the post-verdict motion for a new trial.  (See ECF 316 at 24–27.)

_Statute of Limitations Jury Charge._  Fuentes Ramirez argues trial counsel fell short by failing to press a statute of limitations argument and submit a proper instruction related to that argument.  At the close of the government's case, defense counsel moved for a judgment of acquittal under Rule 29, Fed. R. Crim. P., arguing there was "nothing in this record reflecting any illegal activity by Mr. Fuentes in the statute of limitations period."  (Tr. 1024.)  The Court denied the motion without prejudice to renewal.  (Tr. 1025–26.)  Counsel then asked the Court to instruct the jury on the statute of limitations and referred the Court to a proposed instruction from

a widely accepted treatise.[3]  (Tr. 1034.)  Upon further review, the Court declined to give a statute

of limitations charge, explaining as follows:

> Where a conspiracy statute does not require proof of an overt act and the indictment alleges a conspiracy that contemplates a continuity of purpose and a continued performance of acts, and the government has introduced sufficient evidence to show that such a conspiracy existed, the conspiracy is presumed to exist until there is an affirmative showing that it has been terminated. And where the government has presented sufficient evidence to show a conspiracy that has continuing purposes or goals, the burden is on the defendant to prove that the conspiracy was terminated, which is usually demonstrated by showing that the goals of the conspiracy were accomplished in some final manner or that he took affirmative steps to withdraw.

(Tr. 1038.)

According to Fuentes Ramirez, it was unreasonable for counsel not to continue

arguing in favor of the proposed instruction or propose a different one.  The Court disagrees.  It

was "sound trial strategy" for counsel to not make further argument at that point because the

premise underlying the request for the charge has no basis in the law.  Best, 219 F.3d at 201.

The type of conspiracy charged did not require the government to prove an overt

act occurred within the limitations period.  See United States v. Grammatikos, 633 F.2d 1013,

1023 (2d Cir. 1980) (explaining that "schemes to import or distribute controlled substances are

the subjects of specifically drawn statutes, and . . . overt acts in furtherance of such specifically

prohibited agreements need be neither pleaded nor proven").  And Fuentes Ramirez did not

claim to have affirmatively withdrawn from the conspiracy.  He contends only that his

participation had ended before the limitations period because, per the testimony of Leonel

Rivera, the *Cachiros* organization with which Fuentes Ramirez was affiliated ceased trafficking

---

[3] Leonard B. Sand et al., Modern Federal Jury Instructions – Criminal.

- 11 -

in narcotics in 2013.[4]  But the conspiracy extended beyond the *Cachiros*.  Fuentes Ramirez also conspired to import cocaine into the United States with the Sinaloa Cartel, suppliers in Colombia, and government officials in Honduras.  And "[t]here was no evidence that defendant had a falling out with" any of those actors "or that any of them withdrew from the conspiracy." (ECF 353 at 16.)  As the Second Circuit concluded in its summary order affirming Fuentes Ramirez's conviction,  "[t]here was ample evidence, such as testimony from cooperating witnesses regarding Fuentes Ramirez's activities with an array of traffickers, politicians, and Honduran officials, from which the jury could reasonably conclude that he was a part of a broader cocaine trafficking conspiracy, which would not end simply because Rivera and Fuentes Ramirez ceased working together."  Morales, 2024 WL 220402, at *6.  It was not unreasonable for counsel to decide not to press the statute of limitations point further at trial and, in any event, Fuentes Ramirez was not prejudiced by any perceived inaction regarding testimony that the *Cachiros* halted narcotics trafficking activities in 2013 given that the conspiracy extended well beyond the *Cachiros*.

*Additional Claims.*  Fuentes Ramirez makes a series of additional claims that may be construed as alleging ineffective assistance of counsel.  Because, as explained below, these claims would be procedurally defaulted if they were instead intended as standalone claims, the Court first considers them through the lens of Strickland.  See Green, 260 F.3d at 83 (explaining that pro se submissions should be considered "to raise the strongest arguments that they suggest").

Fuentes Ramirez asserts that his arrest was unlawful because he did not realize that he was in custody and did not fully "appreciate the words 'you're under arrest[.]'"  (ECF

---

[4] Fuentes Ramirez suggests Rivera testified that the *Cachiros* ceased drug trafficking operations in 2011, but that appears to be an error.  (See Tr. 381, 446–47.)

855 at 9.)  However, an individual's subjective beliefs about whether he is under arrest are not dispositive of the lawfulness of an arrest.  See, e.g., Travis v. Village of Dobbs Ferry, 355 F. Supp. 2d 740, 747 (S.D.N.Y. 2005) (McMahon, J.) (citing United States v. Mendenhall, 446 U.S. 544, 554 (1980)) ("An 'arrest' occurs whenever a reasonable person in the plaintiff's position, innocent of any crime, would not believe that he/she was free to go."); United States v. Clark, 552 F. App'x 40, 42 (2d Cir. 2014) (explaining that "an arrest must be supported by 'probable cause'").  Fuentes Ramirez never contends the warrant for his arrest was defective in any way or that probable cause was absent.

Fuentes Ramirez also argues inculpatory statements he made during the interview subsequent to his arrest were improperly obtained.  He contends his confession was coerced and his privilege against self-incrimination violated because "there was simply no way" he could "in an extremely stressful 'moment's notice' accurately and adequately grasp and comprehend American law" as a Honduran citizen, and because law enforcement did not offer to contact a Honduran consular representative on his behalf until the end of the interview.  (ECF 855 at 11, 15.)  Even if there was delay in the offer to contact a consular representative, that delay would not be grounds for relief under section 2255.  See Dimas-Lopez v. United States, 00-cr-153, 2005 WL 1241890, at *3 (S.D.N.Y. May 25, 2005) (Batts, J.) (collecting cases and construing the Vienna Convention on Consular Relations).  Further, Fuentes Ramirez was Mirandized in both English and Spanish and "offered food and beverage" at the time.[5]  (ECF 855 at 9.)  He makes no claim that law enforcement employed coercive tactics, and he describes his own behavior at the time as "cooperative and assertive in demonstrating his innocence[.]"  (Id. at 11.)  These allegations do not suggest his Miranda waiver was anything other than knowing and

---

[5] Fuentes Ramirez states that he received the "DEA equivalent of the standard Miranda warning" but does not contend it was improper in form.  (See ECF 855 at 9.)

voluntary.  See, e.g., United States v. Ferrer, 765 F. App'x 622, 624–25 (2d Cir. 2019)

(explaining that whether a Miranda waiver is knowing turns on the totality of the circumstances).

Fuentes Ramirez next argues that the government's search of cellphones in his

possession at the time of his arrest and his son's iCloud and social media accounts was unlawful

"due to the lack of probable cause, due to . . . the fact that no prior DEA investigation into Mr.

Fuentes existed[.]"  (ECF 855 at 19.)  But he offers no explanation for his assertion that there

was no probable cause, and the record belies his claim that the DEA had not investigated him

prior to his arrest.  (See, e.g., ECF 1 (complaint against Fuentes Ramirez pre-dating his arrest

and including DEA sworn statement).)  Nor does he claim law enforcement was without a

warrant.  And as explained above, Fuentes Ramirez does not appear to have standing to

challenge the search of his son's accounts.  See Payner, 447 U.S. at 731.

Finally, Fuentes Ramirez claims that the prosecution denied him information

relating to Leonel Rivera and "information that casts doubt that the DEA was working with

O.F.A.C. government of Honduras" that is contained in "phones and other relevant

documentations."  (ECF 855 at 34.)   Notably, Fuentes Ramirez does not "set forth any specific

facts indicating that such evidence was withheld."  See Verdel v. Cunningham, 07-cr-837, 2008

WL 2755833, at *4 (S.D.N.Y. July 14, 2008) (Koeltl, J.).  He also cryptically refers to

exculpatory information he is currently seeking through "F.O.I.A./P.A."  (ECF 855 at 34.)  The

prosecution, however, is not responsible for processing Fuentes Ramirez's FOIA requests.

These allegations do not provide a foundation for colorable claims.  The Court

therefore declines to find defense counsel ineffective for failing to raise them.  See Strickland,

466 U.S. at 689 (instructing that "a court must indulge a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance").

Generally, a defendant is in procedural default if a claim raised in a section 2255 motion was not first raised in a direct appeal.  See Bousley v. United States, 523 U.S. 614, 622 (1998); see also Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).  The claims described in this section thus also fail in the event they were not intended to allege ineffective assistance, as none was raised on appeal in the Second Circuit.  See Massaro v. United States, 538 U.S. 500 (2003) (holding that the procedural default rule does not apply to ineffective assistance claims).

Fuentes Ramirez's motion does not articulate a valid excuse for his procedural default.  "Where a defendant has procedurally defaulted . . . the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that he is 'actually innocent.'"  Gupta v. United States, 913 F.3d 81, 84 (2d Cir. 2019) (internal citations omitted) (quoting Bousley, 523 U.S. at 622).  Fuentes Ramirez makes no express argument about cause and prejudice, though he explains that he expects to obtain exculpatory evidence through his pending FOIA requests.  Those pending requests, however, cannot constitute cause because Fuentes Ramirez was able to file his motion even though they had not been answered.  See id.  Nor do Fuentes Ramirez's repeated, conclusory assertions of his innocence, (see ECF 855 at 10, 17, 31), suffice, see Bousley, 523 U.S. at 623 (quoting Schlup v. Delo, 513 U.S. 298, 328–29 (1995)) (internal quotation marks omitted) ("To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.").

CONCLUSION

Fuentes Ramirez's motion is DENIED, and the Clerk is respectfully directed to terminate DE 855, 15-cr-379; DE 10, 24-cv-8924; and close the docket at 24-cv-8924.  All other

- 16 -

relief is denied.  Movant has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163–64 (2d Cir. 2011).  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied.  See Coppedge v. United States, 369 U.S. 438 (1962).

        SO ORDERED.

                                    P. Kevin Castel
                              United States District Judge

Dated:  New York, New York
        April 22, 2026

COPY MAILED TO:
Geovanny Fuentes Ramirez
Register No. 20883-104
USP Coleman I
U.S. Penitentiary
P.O. Box 1033
Coleman, FL 33521